## HOLMES v. ROWE.

No. 8615.

Circuit Court of Appeals, Ninth Circuit.

June 14, 1938.

Nathan G. Gray, of Berkeley, Cal., for appellant.

John Corgiat, Jr., of Oakland, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

Upon appeal from an order granting appellee's motion for a permanent injunction.

On October 23, 1933, appellant instituted an action against the appellee and others, entitled as follows:

"Justice's Court of the City of Berkeley, County of Alameda, State of California. Oliver Youngs, Justice of the Peace. Number of action 24,923 S. O. Holmes, Plaintiff, v. D. Harrison Rowe, Kate S. Rowe, his wife, Donald R. Rowe, et al., Defendants. Nature of action— Money rent."

While this action was still pending, appellee, on November 4, 1935, filed his voluntary petition in bankruptcy in the District Court of the United States. In his Schedule A-3, "Creditors whose claims are unsecured," the name of creditor "S. O. Holmes," by mistake was entered therein as "S. O. Hoames," the intention however to list the claim, the enforcement of which was enjoined in this proceeding, was evident from the wording which was as follows: "S. O. Hoames, Assignee, Oakland Mortgage & Finance Company, Oakland, 314 Pacific Building, Oakland, Justice Court, Berkeley, Suit #24923, Rent, $155.50."

Prior to the time appellee filed his petition in bankruptcy he had a discussion with S. O. Holmes concerning the action which had been instituted against him and the payment of the indebtedness involved therein and at that time S. O. Holmes informed him that he had already secured a default judgment against him.

Rowe was adjudicated a bankrupt on November 5, 1935, and on March 23, 1936, was given his discharge.

On April 6, 1936, without any notice to appellee, appellant caused a judgment in the Justice's Court to be entered against the appellee on the complaint which had been filed October 23, 1933, long prior to the proceedings in bankruptcy, and on March 9, 1937, levied execution upon appellee's wages earned by him as an employee of the Friden Calculating Machine Company. Appellee first learned of this judgment only after execution had been levied on his wages. He thereupon filed with the Clerk of the said Justice's Court a petition to restrain appellant from levying execution upon the judgment, which was denied. Again, on April 22, 1937, appellee filed a petition in the same court, applying for an order directing that the judgment be canceled and discharged of record, which was also denied.

On June 15, 1937, appellee filed in the United States District Court, the same court which granted his discharge in bankruptcy, a "Supplemental petition to restrain creditor from levying execution upon judgment against bankrupt herein." In his petition, among other things, appellee alleged:

"* * * that the judgment upon which the said executions were levied are based upon a claim, provable and discharged by the Order set forth in the preceding paragraph hereinabove set forth; That said judgment was rendered in the Justice's Court of the City of Berkeley by the Honorable Oliver Youngs, Justice of the Peace in an action entitled, 'S. O. Holmes, Plaintiff, v. D. Harrison Rowe, D. Ray Rowe et als, Defendants,' and numbered 24923; That said action was pending on and before the 4th day of November 1935; That petitioner set forth in his schedule of unsecured liabilities, on file herein, the claim upon which said action was based together with the title of the said action and its number; That prior to the said 4th day of November 1935, the said S. O. Holmes informed petitioner that he S. O. Holmes had procured a default judgment against petitioner; That petitioner believed the said S. O. Holmes and continued to so believe until after he filed his original petition in the above entitled matter for relief from execution; That the said judgment rendered in the above entitled Justice's Court action was entered (by default) on or about the 6th day of April 1936; That petitioner received no notification of the rendition of said judgment whatsoever from the Court, the court clerk or from the plaintiff, S. O. Holmes; That petitioner's first knowledge of said judgment came to him on or about the 9th day of March 1937."

The District Court entered its order granting appellant permission to file his supplemental petition and also granted his oral motion to amend Schedule A-3 upon its face so as to read "S. O. Holmes, Assignee," instead of "S. O. Hoames, Assignee."

On July 3, 1937, the Court entered its order that appellee's petition for a permanent injunction be granted and that an injunction issue accordingly. From this order the present appeal is taken.

The main contention of appellant is that the order of the District Court granting the injunction is erroneous, in that

the Court did not have jurisdiction of the subject-matter involved in said petitions, because of the fact that neither the petitions, nor the evidence, disclosed that the bankrupt had exhausted his remedies in the state court so as to enable him to come into the Federal Court.

With this contention of appellant we do not agree. A review of the decisions discloses that a Federal District Court, once having obtained jurisdiction of a controversy, and having rendered a decision in the matter, has complete power to protect the judgment or decree which it has rendered, and may go so far as to enjoin an action entertained in the state court by a litigant, involving the same subject-matter, when such action may in any way interfere with, or nullify the effect of said judicial determination. So here, the Court having discharged the appellee in bankruptcy, still retained sufficient jurisdiction to grant an injunction restraining appellant from levying execution upon a judgment rendered in his favor by the state court against the appellee upon a claim adjudicated in the bankruptcy court.

That the District Court had the power to issue this writ is undoubted. The Judicial Code provides (28 U.S.C.A. § 377) that: "* * * The Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

The Bankruptcy Act, section 2 (15), reinforces that authority by providing (11 U.S.C.A. § 11 (15), that: "* * * The courts of bankruptcy * * * are hereby invested, * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, * * * to * * * (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title * * *."

Referring to these statutes, the Supreme Court has repeatedly said that, "'the power to issue an injunction when necessary to prevent the defeat or impair-ment of its jurisdiction is * * * inherent in a court of bankruptcy, as it is in a duly established court of equity.'" Steelman v. All Continent Corp., 301 U.S. 278, 289, 57 S.Ct. 705, 710, 81 L.Ed. 1085. See, also, Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110.

That the District Court not only had the power to issue the writ, but committed no error in issuing it in this particular case, is amply borne out by the case of Local Loan Co. v. Hunt, 292 U.S. 234, 239, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 93 A.L.R. 195, where the Court said:

"The pleading by which respondent invoked the jurisdiction of the bankruptcy court in the present case is in substance and effect a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same court. That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. [Cases cited.] And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved * * *.

"These principles apply to proceedings in bankruptcy. [Cases cited.] Petitioner relies upon a number of decisions where other federal courts sitting in bankruptcy have declined to entertain suits similar in character to the present one, on the ground that the effect of a discharge in bankruptcy is a matter to be determined by any court in which the discharge may be pleaded. [Cases cited.] To the extent that these cases conflict with the view just expressed they are clearly not in harmony with the general rule in equity announced by this court. And we find nothing, either in the nature of the bankruptcy court or in the terms of the Bankruptcy Act, which necessitates the application of what would amount to a special rule on this subject in respect of bankruptcy proceedings. * * *

"What has now been said establishes the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and order, and enjoin petitioner· from its threatened interference therewith."

See, also, Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Looney v. Eastern Texas R. Co., 247 U.S. 214, 38 S.Ct. 460, 62 L.Ed. 1084.

Nor do we consider that the failure of the appellee to exhaust his remedies in the state court would preclude the District Court from exercising its jurisdiction in the matter. This was also determined in the case of Local Loan Co. v. Hunt, supra, which cited, among others, the case of Seaboard Small Loan Corporation v. Ottinger, 4 Cir., 50 F.2d 856, 77 A.L.R. 956. Here the appellant creditor contended that the District Court lacked jurisdiction to enjoin the Loan Company and its treasurer from attempting, by the assertion of a lien, from collecting a debt discharged by bankruptcy. The Court, in ruling against such contention, said at page 859:

"Coming to the question of jurisdiction, we entertain no doubt as to the power of the court below-to grant the relief prayed. The Bankruptcy Act § 17 expressly provides that, with certain specified exceptions, a discharge in bankruptcy shall release a bankrupt from all of his provable debts. 11 U.S.C.A. § 35. And as said by the Supreme Court in Chicago, B. & Q. R. Co. v. Hall, 229 U.S. 511, 515, 33 S.Ct. 885, 886, 57 L.Ed. 1306, it was 'intended not only to secure equality among creditors, but for the benefit of the debtor in discharging him from his liabilities and enabling him to start afresh with the property set apart to him as exempt.' 'The determination of the status of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern,' said Chief Justice Fuller in Hanover Nat. Bank v. Moyses, 186 U.S. 181, 192, 22 S.Ct. 857, 862, 46 L.Ed. 1113.

"In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves trouble, embarrassment, expense, and possible loss of employment. A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant. The demand under an assignment order, in an effort to collect a debt discharged by bankruptcy, is nothing less than an attempt to circumvent the order discharging same and to deprive the bankrupt of the benefit of that order. It was to meet situations such as this that the bankruptcy court was vested with the general power under section 2, subsection 15 of the Bankruptcy Act (11 U.S.C.A. § 11 (15) to 'make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title.'"

"The fundamental question involved is the effect of the discharge in bankruptcy upon the debt * * *. The question may be decided by either state or federal court according to state law, but the bankruptcy court has primary and superior jurisdiction to determine the effect of its own decree of discharge, and it may exercise, or refuse to exercise, that jurisdiction according to the exigencies of the case. * * *

"We conclude that the trial court had jurisdiction to decide whether or not the discharge in bankruptcy relieved the bankrupt of the debt * * *." Sims v. Jamison, 9 Cir., 67 F.2d 409, 410, 411.

"* * * it is well settled that a bankrupt when once discharged should not be hampered in the enjoyment of future earnings. The courts have repeatedly said that one of the purposes of bankruptcy is to give an embarrassed debtor a new chance in life; to wipe out the debts provable in bankruptcy and to allow him to apply his future earnings to future liabilities without embarrassment from his old creditors."

Equitable Life Assur. Soc. of United States v. Stewart, D.C., 12 F.Supp. 186, 192. See, also, Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195.

Order affirmed.