### HELMS et al. v. HOLMES.

### No. 4911.

Circuit Court of Appeals, Fourth Circuit.

June 15, 1942.

---

[2] United States v. Grieme, 3 Cir., June 9, 1942, 128 F.2d 811.

Jesse F. Milliken, of Monroe, N. C., for appellants.

W. C. Davis, of Charlotte, N. C., for appellee.

Before SOPER and DOBIE, Circuit Judges, and PAUL, District Judge.

DOBIE, Circuit Judge.

On March 24, 1931, the appellee, M. C. Holmes, filed a voluntary petition in bankruptcy in the District Court of the United States for the Western District of North Carolina. He secured a discharge in the usual form on October 8, 1931, from all debts set up in the Schedule of Liabilities.

At the time the bankruptcy petition was filed, Holmes and his wife, as joint obligors, were indebted to the appellant, H. K. Helms, in the sum of $2,570.10. This debt was secured by a deed of trust on certain real estate in Union County, North Carolina.

Holmes had specifically listed this indebtedness in his Schedule of Liabilities, but Helms filed no claim for his debt in the bankruptcy proceedings. When the bankruptcy court heard the cause, the equity in the property which secured the deed of trust was waived by the trustee in bankruptcy. Helms thereupon foreclosed the deed of trust. On March 21, 1932, five months after Holmes had obtained his discharge in bankruptcy, a sale of the property secured by the deed of trust was made by the Trustee to Helms for $1,500.

On April 2, 1934, Helms instituted a civil action in the Superior Court of Union County, North Carolina, against Holmes and his wife on the original indebtedness of $2,570.10, less a credit of $1,454.65, the net proceeds derived from the sale of the property to Helms. Personal service of the summons, together with a copy of the complaint, was duly made upon both Holmes and his wife on April 10, 1934, by the Sheriff of Union County. No answer was filed by either of the defendants and after the time for the filing of an answer had expired, judgment was duly entered by default on June 11, 1934, against both Holmes and his wife.

On March 22, 1940, a transcript of this judgment was duly docketed in Mecklenburg County, North Carolina, where Holmes and his wife then resided and where Holmes had acquired property subsequent to his discharge in bankruptcy. Thereafter, in October, 1941, execution was issued on the original default judgment out of the Superior Court of Union County directing the appellant, G. Mack Riley, Sheriff of Mecklenburg County, to levy on any property found in his county belonging to Holmes or his wife, and to sell the same to satisfy the judgment. Holmes thereupon brought this action in the United States District Court for the Western District of North Carolina, for the purpose of enjoining the execution of this writ by Sheriff Riley.

Upon the institution of the action, a temporary restraining order was issued, and this order was made permanent by the court below on January 27, 1942, after a hearing on the agreed statement of facts and the testimony of Holmes. From this final restraining order, Helms has duly taken an appeal to this Court.

It is obvious that the Superior Court of Union County had jurisdiction of both the subject matter and the parties in the action brought by Helms against Holmes and his wife. Nor is there any allegation or evidence of fraud, accident, or surprise. The default judgment, therefore, was validly obtained in due course and remained on the docket of the Union County Court from June 11, 1934, until execution was issued in October, 1941.

While admitting these facts, Holmes, nevertheless, vigorously contends that he ignored the summons served upon him and his wife, and failed to consult a lawyer or answer the complaint because he thought the discharge in bankruptcy operated as an automatic defense to any subsequent action brought against him by a creditor on a claim which came within the discharge in the bankruptcy proceeding. Of course, Mrs. Holmes remained liable as joint obligor on the original debt, since a discharge in bankruptcy is personal to the party to whom it is granted and does not inure to the benefit of the co-debtor. Moyer v. Dewey, 103 U.S. 301, 26 L.Ed. 394. Under North Carolina law, however (with certain exceptions not here applicable), in an action instituted against a married woman, her husband must be made a party defendant. North Carolina Consolidated Statutes, § 454. This was a further reason why Holmes failed to plead his discharge, for he thought he was a mere nominal party defendant and that the action by Helms was, in reality, one against his wife alone, in an effort to secure a judgment against her.

It is a matter of Hornbook learning that a defendant in an action at law who has a valid defense to a suit which is fully cognizable in a court of law and within its jurisdiction, and which he has an adequate opportunity to interpose, is chargeable with gross negligence if he fails to set up this defense, in the absence of fraud, accident or surprise. Moreover, he cannot later seek relief in equity against the enforcement of the judgment in that action, on the same grounds which constituted his original defense.

As applied to the instant case, it is patently clear that Holmes' discharge in

bankruptcy constituted a complete and adequate remedy at law in the nature of an affirmative defense. Accordingly, under the rules of pleading in the United States Courts, as well as in the Courts of all the States, it was incumbent upon Holmes to plead this defense if he desired to avail himself of it. Federal Rule of Civil Procedure 8(c), 28 U.S.C.A. following section 723c; Paschall v. Bullock, 80 N.C. 329.

It must be remembered that a discharge in bankruptcy is neither a payment nor an extinguishment of debts. It is simply a bar to their enforcement by legal proceedings. Robinson v. Exchange National Bank of Tulsa, Oklahoma, D.C., 28 F.Supp. 244; Citizens' Loan Association v. Boston & Maine Railroad, 196 Mass. 528, 82 N.E. 696, 14 L.R.A.,N.S., 1025, 124 Am.St.Rep. 584, 13 Ann.Cas. 365. And no court, other than the bankruptcy court, is bound to take judicial notice of the discharge, unless it is pleaded as a release. Collins v. McWalters, 35 Misc. 648, 72 N.Y.S. 203. Nor is a creditor guilty of contempt of the bankruptcy court in suing on the old debt in the state court, even though he has notice of the debtor's discharge. In re Weisberg, D.C., 253 F. 833, 834.

Holmes' erroneous belief that the effect of the bankruptcy proceedings was to absolve him, ipso facto, from all future liability for his debts covered by the discharge, is contrary to the express rule of the Federal Courts: "The discharge in bankruptcy * * * did not automatically relieve him from even the provable debts previously owed by him and duly scheduled." In re Weisberg, D.C., 253 F. 833, 834.

Thus, the bankrupt is merely given a personal defense which is waived if he chooses not to avail himself of it. This rule that a failure so to plead operates in law as a waiver of the defense has been uniformly followed by State and Federal Courts alike. Remington on Bankruptcy, Fifth Edition, §§ 3459, 3499; First National Bank v. Pothuisje, 217 Ind. 1, 25 N.E.2d 436, 130 A.L.R. 1238; Rice v. Chapman, 234 App.Div. 279, 255 N.Y.S. 35; Smith v. Cook, 71 Ga. 705. As was stated in an early Federal case:

"Boardway, when sued, might have appeared in the City Court and there pleaded his discharge in bankruptcy and defeated the suit, assuming the facts to have been as stated; but this he did not do. *This court has no power to interfere with the enforcement of that judgment.* If, after bankruptcy proceedings are ended, a creditor sues the bankrupt on a claim which has been discharged, he may appear and plead and prove his discharge, and it will be a complete defense. *If he does not appear, but allows judgment by default, the court in bankruptcy is powerless to grant any relief.* [Italics ours]. The remedy of Boardway, if any, is under section 1268 of the New York Code of Civil Procedure. That section provides:

" 'At any time after one year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge * * * for an order, directing the judgment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment *or the debt upon which such judgment was recovered,* an order *must* be made directing said judgment be canceled and discharged of record.' " In re Boardway, D.C., 248 F. 364, 365.

We are unaware of a similar applicable statute in North Carolina. Cf. Paschall v. Bullock, 80 N.C. 329. And in the absence of such an enactment, a defendant who fails to plead his discharge in bankruptcy in an action on a debt so discharged cannot have a subsequent default judgment vacated. Tune v. Vaughan, 170 Ark. 971, 281 S.W. 906; cf. Bell v. Cunningham, 81 N.C. 83. Finally, execution may be levied on the property of a bankrupt acquired after his discharge on a default judgment on a discharged debt. Garner v. Hartsfield Loan & Savings Association, 49 Ga.App. 199, 174 S.E. 647. For a State Court is bound to take notice of a discharge *only* when properly and seasonably pleaded by the bankrupt. In re Devereaux, D.C., 76 F.2d 522, certiorari denied Devereaux v. Belsey, 296 U.S. 589, 56 S.Ct. 100, 80 L.Ed. 416.

We are not unmindful of a recent line of Federal cases alleviating the harsh rule of In re Boardway. The trend is aptly illustrated by Holmes v. Rowe, 9 Cir., 97 F.2d 537, 539:

"A review of the decisions discloses that a Federal District Court, once having obtained jurisdiction of a controversy, and having rendered a decision in the matter, has complete power to protect the judgment or decree which it has rendered, and may go so far as to enjoin an action en-

tertained in the state court by a litigant, involving the same subject-matter, when such action may in any way interfere with, or nullify the effect of said judicial determination. So here, the Court having discharged the appellee in bankruptcy, still retained sufficient jurisdiction to grant an injunction restraining appellant from levying execution upon a judgment rendered in his favor by the state court against the appellee upon a claim adjudicated in the bankruptcy court.

"That the District Court had the power to issue this writ is undoubted. The Judicial Code provides (28 U.S.C.A. § 377) that: ' * * * The Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law.'

"The Bankruptcy Act, section 2(15), reinforces that authority by providing (11 U.S.C.A. § 11(15), that: ' * * * The courts of bankruptcy * * * are hereby invested, * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, * * * to * * * (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title * * *.'

"Referring to these statutes, the Supreme Court has repeatedly said that, 'the power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is * * * inherent in a court of bankruptcy, as it is in a duly established court of equity'. Steelman v. All Continent Corp., 301 U.S. 278, 289, 57 S.Ct. 705, 710, 81 L.Ed. 1085. See, also, Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110."

We recognized and applied this principle in Seaboard Small Loan Corporation v. Ottinger, 4 Cir., 50 F.2d 856, 859, 77 A.L.R. 956, where Judge Parker stated:

"In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves trouble, embarrassment, expense, and possible loss of employment. A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant."

It has been expressly held, however, that whether the Bankruptcy Court should exercise such *discretionary* authority is a matter to be determined from the peculiar facts of the particular case. In re Cleapor, D.C., 16 F.Supp. 481. In the instant situation, we do not feel that there is sufficient ground for the invocation of equitable relief. Holmes was not unduly harassed by Helms, and the simple expedient of a plea in bar was fully available to him. True, he labored under a misconception that his discharge was an automatic defense and he erroneously thought that the action was purely one against his wife. But the Federal Judiciary may interfere with state proceedings only where "unusual circumstances" exist. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. A liberal application of such Federal interference has been severely criticized by the commentators. Glenn on Liquidation, § 355; (1942) 28 Virginia Law Review 650. See, also, In re Harris, D.C., 28 F.Supp. 487; In re Anthony, D.C., 42 F.Supp. 312. Moreover, the defense of discharge, while perfectly legal and valid, is not highly favored. Remington on Bankruptcy, Fifth Edition, § 3490. Accordingly, while we are fully cognizant of the present unfortunate predicament of Holmes, the dictates of orderly administration in bankruptcy proceedings must prevail in this situation, which is fraught with danger. We, therefore, adhere to the early mandate of the Supreme Court: "We are of opinion that [the defendant bankrupt],

having in his hands a good defense at the time judgment was rendered against him, namely, the order of discharge, and having failed to present it to a court which had jurisdiction of his case, and of all the defenses which he might have made, including this, the judgment is a valid judgment * * *," Dimock v. Revere Copper Co., 117 U.S. 559, 6 S.Ct. 855, 859, 29 L. Ed. 994. The local law of North Carolina is to the same effect. Paschall v. Bullock, 80 N.C. 329; Bell v. Cunningham, 81 N.C. 83.

In this connection, it may be noted, too, that after the default judgment had been obtained in the State Court against the bankrupt, or even after execution had been issued on this judgment, the State Court, if any equities still existed in favor of the bankrupt, had ample power over its own judgments and processes, and could grant the bankrupt any equitable remedies to which the bankrupt might fairly be entitled. The failure of the bankrupt even to seek any such redress in the State Court affords, we think, another reason for the views expressed in our opinion.

We feel our holding that the court below erroneously issued an order restraining Helms from levying execution on his judgment is in accord with the motivating philosophy of the recent decision of Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. ——, 137 A.L.R. 967.

For the reasons assigned, the judgment below is reversed.

Reversed.

PAUL, District Judge (dissenting).

It is not clear to me whether the conclusion reached in the majority opinion is based upon the view that a court of bankruptcy has no power (jurisdiction) to grant injunctive relief against a judgment obtained on a debt previously discharged in bankruptcy, or upon the view that the facts of this particular case do not justify the relief granted by the District Court. From either or both views I am compelled to dissent.

The trend of the earlier cases interpreting the present Bankruptcy Act was generally to the effect that when a bankrupt had been discharged and the bankruptcy proceeding ended, the protection of the bankrupt's rights thereafter was to be left to the courts in which they were brought in jeopardy, which were usually the state courts. The idea seemed to be that when a bankrupt had been discharged, the bankruptcy court lost all jurisdiction over him and his affairs, including the power to protect him in the rights which the bankrupt law gave him. The majority opinion has, I think, taken its color from these older cases and has overlooked or taken too lightly the broader and now generally accepted view of the later cases which deny any such limitation. For example, the conclusion in In re Boardway, D.C., 248 F. 364, which the majority opinion cites as establishing the rule that no injunction should issue here, appears to have been based in large measure on the view that the bankruptcy court had lost jurisdiction after the discharge. The opinion is replete with expressions to this effect; the court saying: "The estate was closed and the bankruptcy proceedings ended, prior to suit brought * * * and prior to the obtaining of such judgment. The jurisdiction of this court ended with the closing of the estate". And again, after discussion of the bankrupt's possible remedy under the state statute, it is said: "In any event this court has no jurisdiction to grant the order after the bankruptcy proceedings were terminated".

This theory that bankruptcy courts relapsed into impotence with the discharge of the bankrupt was definitely discarded in Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 93 A.L.R. 195, and repeatedly since then and to an increasing degree courts of bankruptcy have entertained proceedings and exercised their powers to secure a bankrupt in the benefits of his discharge. In Local Loan Co. v. Hunt, in answer to the contention that the bankruptcy court was without jurisdiction, after discharge, to stay proceedings in the state court, the court said:

"First. The pleading by which respondent invoked the jurisdiction of the bankruptcy court in the present case is in substance and effect a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same court. That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled."

The court further says:

"Petitioner relies upon a number of decisions where other federal courts sitting in bankruptcy have declined to entertain suits similar in character to the present one, on the ground that the effect of a discharge in bankruptcy is a matter to be determined by any court in which the discharge may be pleaded", citing cases to this effect.

It then distinctly overrules these cases, including In re Weisberg, D.C., 253 F. 833, cited in the majority opinion here. Further it is said:

"What has now been said establishes the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and order, and enjoin petitioner from its threatened interference therewith."

While it is expressly stated in Local Loan Co. v. Hunt, 294 U.S. at page 241, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195, that the bankruptcy court probably should not interfere except under unusual circumstances, the case undoubtedly makes it clear that a court of bankruptcy has power, by injunction, to make effective the order of discharge where the circumstances demand such action. Following Local Loan Co. v. Hunt, bankruptcy courts have repeatedly exercised jurisdiction to make effective the order of discharge by injunction against creditors who have disregarded it. See Holmes v. Rowe, 9 Cir., 97 F.2d 537; Davison-Paxon Co. v. Caldwell, 5 Cir., 115 F.2d 189, 133 A.L.R. 432; In re Cleapor, D.C., 16 F.Supp. 481; In re Tillery, D.C., 16 F.Supp. 877; and In re Patt, D.C., 43 F.Supp. 754. In Devereaux v. Belsey, 2 Cir., 76 F.2d 522, the jurisdiction is expressly recognized (citing Local Loan Co. v. Hunt) although it was held not a proper case for its exercise.

It is probable that this modern view of the right of a bankruptcy court to protect by injunction the effect of a discharge in bankruptcy has been inspired by the necessity of dealing with manifest injustices that have arisen rather than from any essential error in the theory of the earlier cases. The average bankrupt is a layman who has been advised that a discharge in bankruptcy releases him from his debts and who has faith in the dignity, the force and effect of a decree of a federal court. He has surrendered his property and has no means to defend himself against further litigation. It has become a custom for greedy creditors to take advantage of this situation by ignoring the bankruptcy proceedings and the order of discharge and suing on their debts in the state courts, hoping that the bankrupt, because of his ignorance and his faith in his order of discharge or because he is unable to employ counsel, will fail to appear and plead the discharge or otherwise defend. And unfortunately this frequently happens. Usually these suits are brought before inferior state courts, such as justices of the peace, many of whom are laymen; and even when the bankrupt appears and pleads his discharge these justices, without legal training or experience in interpretation of the Bankruptcy Act, undertake to pass upon the effect of the discharge as affecting the particular debts— usually reaching erroneous conclusions and usually adverse to the bankrupt. Every court which deals with any considerable number of bankruptcy cases is familiar with the difficulties which bankrupts have in protecting themselves from rapacious creditors even after discharge. Some of these conditions are stated with accuracy and force in the opinion of Judge Underwood in In re Cleapor, D.C., 16 F.Supp. 481, 483, 484.

The conditions above recited do not in themselves embody any legal principles, as I am well aware. But they are factual realities which exist to a greater or less degree in every district and which have become so prevalent in some communities as to amount to a practical nullification of the Bankruptcy Act. They are the realities which have prompted courts of bankruptcy to exercise the power of injunction to protect the bankrupt in his discharge and to discard the theory that he must in all cases fight his way by successive appeals through the state courts until he found some tribunal which would vindicate his rights. Concededly he could pursue this latter course if he chose and were able, but it was to protect him from the expense and harassment of doing so that led the court in Local Loan Co. v. Hunt to approve the course there followed.

Because it so clearly accords with justice and offers in many cases the only barrier to grave injustices to bankrupts, courts of bankruptcy, acting on authority of Local Loan Co. v. Hunt, have not hesitated to apply the use of injunctive relief to pro-

tect the effect of an order of discharge and have extended its use to cases of varying facts. True, many of the cases have repeated, as was stated in the leading case, that the bankruptcy court should use its power of injunction only in unusual cases and not as a matter of course. But the right to enjoin being established, the circumstances under which it may be exercised are not confined to any definite and limited state of facts. The reported cases show a tendency to enlarge rather than to restrict its use. In my opinion this tendency is a wise and humane one and necessary to prevent nullification of the beneficent purposes of the bankrupt law at the hands of ingenious and grasping creditors. Certainly the right to an injunction is not barred merely because the bankrupt might have fought the matter out in the state court. Local Loan Co. v. Hunt decided this. And seemingly it is not barred in all cases merely because the bankrupt has failed to assert his defenses in the court where he has been sued.

In Holmes v. Rowe, 9 Cir., 97 F.2d 537, 539, a suit in the state court had been brought and while it was pending the debtor was adjudicated a bankrupt, listing the debt sued on among his liabilities. The suit remained pending until after the bankrupt's discharge, when the creditor took judgment by default and caused execution to be issued. The bankrupt, following his adjudication, could have appeared in the state court and asked a stay because of his pending bankruptcy; and this would have been a normal course of action. However, he failed to make any defense in the state court and it is stated that his reason for the failure was because he had been led by the creditor to believe that a judgment had been taken prior to the bankruptcy. After the state court had denied a petition to enjoin the levying of execution and to cancel the judgment of record, application was made to the bankruptcy court which granted a permanent injunction against enforcement of the judgment. The language of the Circuit Court of Appeals indicates its view that this power to enjoin extends to a judgment obtained after discharge. It is said:

"So here, the Court having discharged the appellee in bankruptcy, still retained sufficient jurisdiction to grant an injunction restraining appellant from levying execution upon a judgment rendered in his favor by the state court against the appellee upon a claim adjudicated in the bankruptcy court."

In Davison-Paxon Co. v. Caldwell, 5 Cir., 115 F.2d 189, 133 A.L.R. 432, the bankrupt was adjudicated while a suit was pending against her in the state court. Following an accepted course of procedure, she applied to the state court for a stay, setting out that the bankruptcy proceeding was pending and that the debt was dischargeable. (This is what the bankrupt in Holmes v. Rowe, supra, failed to do.) The creditor's contention that the debt was not dischargeable as being "a liability for obtaining money under false pretenses", Bankruptcy Act § 17, 11 U.S.C.A. § 35, was upheld by the state court which gave judgment. On application to the bankruptcy court for an injunction, after discharge, that court held that under a correct interpretation of the provisions of § 17, the debt was dischargeable and had been discharged and granted the relief prayed for. Certiorari was denied in this case, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523.

In in re Cleapor, D.C.Ga., 16 F.Supp. 481, there was among the bankrupt's debts one for the payment of which the creditor claimed to have an assignment of salary. The creditor, although fully aware of the bankruptcy proceeding and that the debt due him was scheduled therein, ignored the bankruptcy proceedings and, after waiting until a discharge had been granted, sued before a justice of the peace for the amount of the alleged assignment. On application for an injunction against prosecution of this suit, the bankruptcy court, holding that the validity, amount and enforcement of securities was for the exclusive determination of the bankruptcy court and that no valid assignment existed, enjoined the creditor from further action in the state court.

Injunctive relief against enforcement of a judgment was granted by this same court (N.D.Ga.) in Matter of Tillery, Bankrupt, 16 F.Supp. 877, under the following conditions: Prior to adjudication the bankrupt had been sued for damages arising out of an automobile accident. He had employed counsel to file a defense in the case but he failed to do so and a default was taken. After amending his complaint to allege a "wilful and malicious injury", the plaintiff took judgment for the amount

of damage suffered. The judgment debtor later went into bankruptcy and the judgment creditor, claiming that the debt was not dischargeable under § 17, ignored the bankruptcy proceeding and caused garnishments to issue on the judgment. On application to the bankruptcy court and upon its determination that the debt was dischargeable, an injunction issued against enforcement of the judgment.

In re Patt, supra, was a case where a creditor sued and obtained judgment during the bankruptcy proceeding. Although the bankrupt did not appear and made no defense in the state court, an injunction issued from the bankruptcy court against enforcement of the judgment.

In Badger v. Jordan Marsh Co., 256 Mass. 153, 152 N.E. 92, the creditor obtained a judgment during the pendency of the bankruptcy proceedings and, after the discharge, undertook to enforce the same. The Supreme Court of Massachusetts approved the issuance of an injunction against the creditor in the face of the fact that the debtor had not appeared in the state court to suggest his pending bankruptcy or ask a stay.

This case is interesting in view of In re Boardway, supra, where it was said that the bankrupt should have proceeded under a state statute to cancel the judgment and that the bankruptcy court was powerless to intervene. The majority opinion in the instant case gives approval to In re Boardway and suggests that in the absence of a North Carolina statute authorizing cancellation of the judgment the bankrupt is without remedy. Badger v. Jordan Marsh Co. points out the remedy under such conditions, for it specifically based the right to an injunction on the stated fact that there was no state statute under which the bankrupt could obtain relief.

These cases have been discussed at some length for the purpose of showing that injunctive relief against enforcement of debts discharged or dischargeable in bankruptcy has been applied to varying sets of facts; that there is no defined boundary for its use. And particularly that it has not necessarily been considered a bar to injunction that the bankrupt neglected his opportunity to plead his bankruptcy in the court where he was sued.

This court, in Seaboard Small Loan Corp. v. Ottinger, 4 Cir., 50 F.2d 856, 77 A.L.R. 956, unhesitatingly approved the issuance of an injunction against a creditor who, after the adjudication of his debtor as a bankrupt, undertook to enforce a prior assignment of wages. The facts are substantially different from the instant case, but much of the reasoning and language in the opinion is applicable here. Pointing out that the primary objective is to protect the debtor in the rights inherent in a discharge in bankruptcy, the court says (50 F.2d at page 859):

"In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it."

And further, after citing the general power of a court of bankruptcy to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title", it adopts the language of Judge Van Valkenburgh in Re Swofford Bros. Dry Goods Co., D.C., 180 F. 549, 553:

"This section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law; provided the court of bankruptcy otherwise has jurisdiction of the person or the subject-matter."

There is universal and settled recognition that, as stated in Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 554, 35 S.Ct. 289, 290, 59 L.Ed. 713:

"It is the purpose of the bankrupt act to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."

Bearing in mind the above purpose, it seems clear that there is imposed on the bankruptcy court the responsibility and the right to exercise its powers to insure that the purpose is really accomplished. While the necessities which have led to the issuance of injunctions against creditors who ignore the bankruptcy of their debtors have created a steadily growing tendency

to extend the use of this form of relief, I do not think we need go beyond the scope and precedent of the decided cases in order to justify its exercise here; and this even if we limit its use to the "unusual" cases to which reference is made.

In the instant case the creditor, after selling the bankrupt's real estate and buying it in, waited for something over two years before suing for the deficiency. He knew, as did also his attorney, that the debt had been discharged as to the bankrupt. There was no contention that the debt was not dischargeable and there was no new promise.

When the deficiency suit was brought the wife of the bankrupt, recognizing her liability and having no defense to offer, made no answer to the suit. The bankrupt did not appear because he not only relied upon the force of his discharge, but because he believed that he was a party to the suit only because the law of the state required him to be a party to any suit brought against his wife and had no idea that judgment would be asked against him. Emphasis should be given to the opinion of the lower court, where it is said:

"I think it undoubtedly true that the bankrupt at that time had no idea that Mr. Helms was seeking a judgment against him, but thought that the only reason he was made a party to the suit was that he was merely joined as a party defendant in the suit against his wife, and further thought that he had been discharged completely from the payment of all debts which were due by him at the time he went into bankruptcy. North Carolina law requires that husband be joined in suit against wife."

This amounts to a finding of fact not only as to the bankrupt's belief but as to the provisions of the North Carolina statute. Taking it to be a fact that the bankrupt did not know that a judgment was being or would be sought against him and that he had reasonable grounds to believe that no judgment would or could be taken against him, the conclusions in the majority opinion lose much of their force so far as they are predicated on the theory that this is merely a case where a bankrupt negligently failed to offer a defense at the proper time. I am unable to see that a man is guilty of "gross negligence" in failing to defend a suit when he does not know that any claim is being asserted against him and has reasonable grounds to believe that none is being asserted.

The district judge also expresses the opinion, for which I think there is sound foundation, that Helms never intended in the beginning to claim any deficiency against the bankrupt. The inference is that, when two years after selling the real estate, Helms brought suit against Mrs. Holmes he saw an opportunity to slip a judgment over against the bankrupt as well and took advantage of it. There is, of course, no way of proving the plans or course of reasoning of this creditor, but the district judge before whom the matter was heard was impressed with the apparent trickery of the whole proceeding. The district court had before it the entire history of this matter, including the bankruptcy proceeding which had been had in that court. Upon the knowledge thus gained it recognized the justice of the prayer for an injunction. Granting its power to enjoin, which I think is clear, the exercise of the power becomes a matter of sound discretion. And because the district judge was in position to know the surrounding circumstances and to sense the atmosphere of this whole matter better than this court can, I would be unwilling to interfere with the exercise of his judgment unless convinced that it was plainly unsound. On the contrary, I am of opinion that the granting of the injunction was clearly right and was necessary to prevent a gross injustice. The purpose of the bankruptcy law to offer insolvent debtors a further chance would mean nothing if this debtor who once turned over his property to his creditors and started anew should have the little property which he has accumulated since snatched away from him by a judgment surreptitiously obtained seven years ago, of the existence of which he never knew, and which represents a debt from which he was discharged.

Coming again to the powers of the bankruptcy court in such cases. There can be no question of the right to enjoin a creditor from suing in the state court pending the bankruptcy proceeding and without requiring the bankrupt to make defense in the latter court. As shown by the decided cases, the bankruptcy court may after discharge enjoin enforcement of a judgment obtained in the state court during the bankruptcy on a suit instituted prior to adjudication, Davison-Paxon Co. v. Caldwell,

supra; and may enjoin enforcement of a judgment obtained after discharge on a suit instituted after discharge, In re Cleapor, supra. It has enjoined enforcement of a judgment obtained before adjudication, In re Tillery, supra; and where both the bringing of the suit and the judgment were during the bankruptcy, In re Patt, supra.

While they are not identical in fact, I can see no difference in principle between the instant case and those cited. Neither the time when the suit is brought nor the time when the judgment is obtained is determinative of any legal principle. If a court of bankruptcy can, as in Re Cleapor, enjoin a creditor from bringing suit, after the bankrupt has been discharged, in an attempt to obtain judgment in spite of the discharge, there would seem no reason why it could not equally enjoin the creditor from enforcement of the judgment if he obtained it. The character of the liability is not altered by being reduced to judgment. Badger v. Jordan Marsh Co., supra. The question is one of the equitable powers of the court to give force and effect to its decrees and to protect the bankrupt in the enjoyment of the rights given him by the law, and is to be determined by the principles of equity. Has the petitioner shown himself to be possessed of equities which justify the exercise of the equitable remedy of injunction in order to protect him? Or do the facts show that because of his own conduct or because there is other remedy available, the court should deny equitable relief? I am convinced that the former is true in this case.

I am unable to see that Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. ——, 137 A.L.R. 967, has any applicability to the present case. That was a question of enjoining prosecution in a state court of a suit on an insurance policy, the rights under which had previously been litigated and adjudged in the federal court. The conclusion of the prevailing opinion, which denies the right to enjoin, is based solely on the provisions of, 28 U.S.C.A. § 379, which specifically excepts proceedings in bankruptcy from its application, a fact which is noted and discussed in the opinion by Mr. Justice Frankfurter.

Nor can I agree that the bankrupt, after the judgment had been taken, should have first sought relief from the state court in which it was obtained. The records of that court did not show any discharge in bankruptcy and, so far as appears, that court had no knowledge of the debtor's previous bankruptcy. The rights of the bankrupt were those created by a Federal statute and embodied in a decree of a Federal court acting in pursuance of that statute, and the question is the right of the bankruptcy court to make effective its own decrees and to insure that the bankrupt is protected in the rights given him by the Bankruptcy Act. If the bankrupt was entitled to relief, the place to seek it was where he did, namely, in the court which had jurisdiction over the statute creating his rights and which had entered the decree establishing them. And if the bankruptcy court has the power to grant the relief prayed for, as I am confident it does, it is its duty to exercise the power in a proper case; and there is no justification for an abdication of its responsibility on the ground that some other court charged with no responsibility in the premises, might, in some unindicated manner have found a way to grant relief. It is one thing to deny the power of the bankruptcy court to grant the relief prayed for; but it is quite another thing to refuse to accept the responsibility of exercising the power on the ground that some other court, if requested, might have exercised it for us.

The very basis on which Local Loan Co. v. Hunt and the other cited cases were decided was that the bankrupt had a right to appeal for protection to the court whose decree had determined his rights and need not be left to the uncertainties of seeking relief elsewhere.

I am of the opinion that the action of the district court should be affirmed.