**Chellie BRADLEY et al., Appellants,**

**v.**

**STRAUS–FRANK COMPANY, Appellee.**

**No. 16904.**

Court of Civil Appeals of Texas.

Dallas.

April 14, 1967.

Neil Brans, of Brans, Higginbotham & Berry, Dallas, for appellants.

Kenneth R. Guest, of Matthews & Matthews, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Action to foreclose a contractual lien on personal property. Straus-Frank Company brought this action against Chellie Bradley and her husband, Arthur M. Bradley, alleging that the defendants had executed and delivered to plaintiff an instrument designated a "Collateral Agreement" by the terms of which defendants had created a lien on an automobile and the cash value of two life insurance policies to secure the payment of an indebtedness evidenced by promissory note executed by

Gene Bradley and Wilburn Wiley in favor of plaintiff. Plaintiff alleged that the indebtedness had not been discharged and that the defendants had failed and refused to deliver the automobile and the life insurance policies to plaintiff so that the car might be sold and the cash value of the policies be realized, and the proceeds applied to the payment of the indebtedness. It was also alleged that Gene Bradley and Wilburn Wiley had been adjudicated bankrupts and discharged in bankruptcy and for that reason they were not made parties to the action.

Defendants denied that a valid lien had been created by the collateral agreement executed by them and further contended that the indebtedness owed to the plaintiff was extinguished by virtue of discharges in bankruptcy of the makers of the note.

Following a nonjury trial judgment was rendered decreeing the existence of a lien upon the automobile and proceeds of the insurance policies and declaring said lien foreclosed. The court directed the sale of the automobile in question with the proceeds thereof being applied to the balance of the indebtedness and also directed that the insurance policies be delivered to plaintiff's attorneys. At the request of defendants the trial court filed findings of fact and conclusions of law.

The facts are virtually without dispute. On June 30, 1965 Gene M. Bradley, son of Mr. and Mrs. Bradley, appellants herein, and Wilburn Wiley, made, executed and delivered to Straus-Frank Company their promissory note in the principal sum of $4,500. On the same date appellants Arthur M. Bradley and wife Chellie Bradley made, executed and delivered to Straus-Frank Company an instrument designated "Collateral Agreement" which contained, inter alia, the following material provisions:

## "COLLATERAL AGREEMENT

"The undersigned, for a good and valuable and sufficient consideration, agree with STRAUS FRANK CO. (herein-after called 'Company') as follows: As collateral security for the payment of all debts, obligations or liabilities now or hereafter existing, absolute or contingent, of GENE M. BRADLEY, to Company (hereinafter called 'indebtedness'), the undersigned hereby assign, transfer to and pledge with Company the following described property this day.

(1) 1962 Plymouth automobile, motor #2127–101356, owned by Mrs. Chellie Bradley as her separate property.

(2) $1,000.00 life insurance policy on life of Mrs. Chellie Bradley, beneficiary being Arthur M. Bradley. Franklin Life Insurance Company #247552.

(3) $2,000.00 life insurance policy on life of Arthur M. Bradley, beneficiary being Mrs. Chellie Bradley. Southwestern Life Insurance Company, policy # 121738."

\* \* \* \* \* \*

"In the event of the nonpayment of any indebtedness when due, or upon the happening of any of the events specified in the last preceding paragraph, Company may then, or at any time thereafter, at its election, apply, set off, collect or sell in one or more sales, with or without any previous demands or demand of performance or notice or advertisement, the whole or any part of the collateral in such order as Company may elect, and any such sale may be made either at public or private sale at its place of business or elsewhere, or at any broker's board or securities exchange, either for cash or upon credit or for future delivery, at such price as Company may deem fair, and Company may be the purchaser of any or all collateral so sold and hold the same thereafter in its own right free from any claim of·the undersigned or right of redemption. Demands of performance, notices of sale, advertisements, and the presence of property at sale are

hereby waived, and Company is hereby authorized to sell hereunder any evidence of debt pledged to it. Any sale hereunder may be conducted by an auctioneer or any officer or agent of Company.

"The proceeds of the sale of any of the collateral and all sums received or collected by Company from or on account of such collateral shall be applied by Company to the payment of expenses incurred or paid by Company in connection with any sale, transfer, or delivery of the collateral, including the expense of compliance with any state or federal securities act affecting the disposition of any collateral, to the payment of any other costs, charges, attorney's fees, or expenses mentioned herein, and to the payment of the indebtedness or any part thereof, all in such order and manner as Company in its discretion may determine. Company shall pay any balance to the undersigned or to the person or persons entitled thereto upon proper demand being made therefor."

\* \* \* \* \* \*

"Each of the undersigned waives any right to require Company to (a) proceed against any person, (b) proceed against or exhaust any collateral, or (c) pursue any other remedy in Company's power, and waives any defense arising by reason of any disability or other defense of any other of the undersigned or any other person, or by reason of the cessation from any cause whatsoever of the liability of any other of the undersigned or against any other person. Until all indebtedness shall have been paid in full, none of the undersigned shall have any right of subrogation, and each of the undersigned waives any right to enforce any remedy which Company now has or may hereafter have against any other of the undersigned or against any other person and waives any benefit of and any right to participate in any collateral or security whatsoever now or hereafter held by Company."

\* \* \* \* \* \*

"Venue of any action arising out of this agreement is fixed in Dallas County, Texas. Upon Demand, the aforesaid automobile will be delivered to Company in Dallas, Texas. All other covenants herein are performable in Dallas, Dallas County, Texas."

Contemporaneous with the execution of the collateral agreement appellants executed a written assignment to Straus-Frank Company of the two life insurance policies referred to in the collateral agreement. The credit manager of Straus-Frank Company testified that the note had been credited with a certain cash payment and had also been credited with the sum of $1,400 which had been borrowed on one of the insurance policies. It was stipulated that appellants were in possession of the Plymouth automobile and the policies of life insurance described in the collateral agreement and that prior to the institution of the suit demand had been made upon appellants to deliver the three items of personal property to either Straus-Frank Company or to the attorneys for the plaintiff. It was also stipulated that Gene M. Bradley and Wilburn Wiley, the makers of the note in question, had been discharged in bankruptcy by the United States District Court for the Northern District of Texas and that during the pendency of such bankruptcy proceeding Straus-Frank Company had been listed as one of their creditors and such company had filed a claim in the bankruptcy proceedings.

The trial court found as a fact that appellants had made, executed and delivered to appellee the collateral security agreement as partial security for payment of the promissory note executed by Gene Bradley and Wilburn Wiley; that demand had been made upon appellants to deliver the automobile and the two life insurance policies described in the collateral agreement to appellee but they had refused to comply with such demand; that the indebtedness remaining due on the note in question is $2,854.28, together with accrued interest thereon.

The court concluded as a matter of law that the collateral security agreement executed by appellants to appellee is supported by a valid and sufficient consideration; that such instrument created a valid lien in favor of appellee upon the properties described in said instrument; that the adjudication of Gene Bradley and Wilburn Wiley as bankrupts and their discharge in bankruptcy did not affect the validity of the collateral security agreement executed by appellants and that the collateral security agreement is legally enforceable against them by appellee; that appellee is entitled to possession of the automobile and the policies of insurance; that appellee is entitled to foreclosure of its lien on said automobile and is entitled to effect all rights assigned by virtue of the assignments of the respective policies of life insurance.

Appellants urge reversal and rendition of the judgment against them in eight points of error, briefed together. Their contentions may be condensed into four general categories: (1) that the collateral agreement cannot be construed as a pledge since there was no physical delivery of the personal property covered therein and hence the court was in error in declaring the existence of a lien; (2) that if the collateral agreement be deemed in law to be a mortgage then the same cannot be legally foreclosed because the indebtedness which the lien allegedly secures has been extinguished by bankruptcy proceedings in the federal court; (3) that appellee by filing its claim in the bankruptcy proceeding made an election of remedies which precludes a judgment in this court; and (4) the judgment rendered does not accord with the prayer for relief. We shall discuss these contentions in the order enumerated.

Appellants correctly state the requisites of a contract of pledge to be (1) a valid debt, (2) delivery of the personal property to secure payment of the debt, and (3) the continued possession of the security by the pledgee with the right of redemption in the pledgor. 46 Tex.Jur.2d

196. It is, of course, necessary to the validity of a pledge that possession of the collateral be delivered to the pledgee, or to someone for him and until the possession and right of control to the property has passed from the owner there can be no pledge, but only an executory contract to pledge. 46 Tex.Jur.2d 198.

However, the trial court did not construe the written instrument to be a pledge agreement. Implicit in the trial court's judgment and conclusions of law is the fact that the parties, by their written agreement, intended to create a lien upon personal property and that such lien was susceptible of being enforced by a court of equity. We agree with appellee's contention that the collateral agreement has been construed by the trial court correctly, and must be construed by us, to be a mortgage or an equitable mortgage, rather than a pledge agreement as contended by appellants.

It is well settled in our jurisprudence that an equitable lien may be created by any express agreement in writing which sufficiently indicates a person's intention to make some particular property a security for a debt or obligation. It is essential to the existence of an equitable lien arising from express contract that the agreement deal with specific property which must be so described that it can be identified and there must be an intention to create the lien which is clearly apparent from the language of the instrument itself together with the attendant circumstances. 36 Tex.Jur.2d, Liens, § 16, pp. 692–693; Berkey & Gay Furn. Co. v. Sherman Hotel Co., 81 Tex. 135, 16 S.W. 807; Industrial Lumber Co. v. Texas Pine Land Ass'n, 31 Tex.Civ.App. 375, 72 S.W. 875, error ref.

In construing the real purpose and intent of the parties to such transactions courts examine the substance of the agreement rather than the form thereof or the title applied thereto. As stated by Justice

Denman of the Supreme Court in Eckford, et al. v. Berry, 87 Tex. 415, 28 S.W. 937: "If, upon the whole case, it appears that the real purpose of the transaction was to secure the payment of a debt, the instrument will be held to be a mortgage, no matter what may be its form."

This court, speaking through Chief Justice Bond, in Williams v. Greer, Tex.Civ. App., 122 S.W.2d 247, said:

"After a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, is in equity a lien. * * * It is not necessary that a lien is created by express contract or by operation of the statute; courts of equity will apply the relations of the parties and the circumstances of their dealings in establishing a lien based on right and justice. 37 C.J. 307, 308."

see also First National Bank in Big Spring v. Conner, Tex.Civ.App., 320 S.W. 2d 391.

■ We think that an examination of the collateral agreement which is the prime subject of this controversy leads to the definite conclusion that it was the intention of the parties that appellants would, for a valuable consideration, create an express lien upon the personal property described therein in favor of appellee to secure the indebtedness of a third person.

Accordingly, we find no error by the trial court in determining that the collateral agreement in question clearly reflected the intention of the parties to create a lien on the property described and that such lien may be enforced by a court of equity.

Appellants' next contention is that if the instrument is not a pledge agreement, as first contended, then it is a mortgage and since the indebtedness which the mortgage secures has been extinguished by a discharge in bankruptcy there is no lien subject to foreclosure. This contention is without support in the law and must be overruled.

■ While it is true that the federal court discharged Gene M. Bradley and Wilburn Wiley, the original makers of the note, in bankruptcy, yet it must be borne in mind that it was appellants' obligation, contractual in nature, to mortgage personal property to secure the indebtedness of their son. The law is well settled that a discharge in bankruptcy is personal to the bankrupt and does not generally cancel, release or impair the liability of a surety or a person jointly liable for a debt. Dominion Culvert & Metal Corp. v. United States Fidelity & Guaranty Co., 238 S.C. 452, 120 S.E.2d 518, 92 A.L.R.2d 1244; Johnson v. Bondurant, 187 Kan. 637, 359 P.2d 861; Helms v. Holmes, 4 Cir., 129 F.2d 263, 141 A.L.R. 1367.

■ The Congress in enacting the bankruptcy statutes specifically stated that: "The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." 11 U.S.C.A., § 34. Thus it was clearly the intention of the Congress not to unnecessarily interfere in any way with the remedies of the creditor against persons responsible to him other than the bankrupt himself. Rosenthal v. Nove, 175 Mass. 559, 56 N.E. 884; 9 Am.Jur.2d, Bankruptcy, § 772, pp. 575–576.

■ Appellants' next contention, that appellee cannot here recover because of an election of remedies, cannot be sustained for several reasons. In the first place, this contention is being asserted for the first time on appeal. The record reveals that no effort was made in the trial court to assert the defense of election of remedies. The trial court made no findings of fact or conclusions of law with reference to such contention. Appellants urged no objections or exceptions to the court's findings of fact and conclusions of law as filed.

**510**

Secondly, appellants did not plead the defense of election of remedies.

In the case of McKenzie v. Carte, Tex. Civ.App., 385 S.W.2d 520, the court considered and overruled identical contentions as made here. The court said:

"The appellants did not object to the findings of fact filed nor did they request any additional findings or conclusions of law. The appellants did not urge the defense of election of remedies in the actual trial of the case, nor did they plead such defense. Betty v. Tuer, 292 S.W. 271 (Tex.Civ.App.1927); Holland Texas Hypotheek Bank v. Broocks, 266 S.W. 183 (Tex.Civ.App.1924, wr. ref.); Nelson v. Seidel, 328 S.W.2d 805 (Tex. Civ.App.1959, wr. ref. n. r. e.).

"In 21 Tex.Jur.2d 210, § 11, Election of Remedies, it is said:

" 'The defense of election of remedies, if relied on to defeat recovery, must be specifically pleaded. Pleading is essential regardless of whether a defense is regarded as one of estoppel, election, or waiver. The defense of election must be presented in the trial court, and cannot be urged for the first time on appeal. And the party who sets up the defense of election must show that his opponent actually had two valid, available, and inconsistent remedies, and that he undertook to pursue one.' "

 Finally, appellants contend that the judgment in several respects, and especially with reference to the order directing them to deliver the insurance policies to Matthews & Matthews, attorneys for appellee, does not conform to the prayer for relief in appellee's pleadings. While it is true that the specific prayer for relief does not accord with the court's judgment yet the petition does contain a general prayer for relief which, when considered in the light of the entire record, justified the court's judgment. It has been held that under a general prayer any relief appropriate to the facts proved at the trial may ordinarily be granted and it is for the court to declare what form of relief is appropriate under the pleadings and the evidence. 45 Tex.Jur.2d, § 49, p. 458; Clark v. Wisdom, Tex.Civ.App., 403 S.W.2d 877.

We have carefully reviewed all of appellants' points and finding no reversible error reflected therein they are overruled.

The judgment of the trial court is affirmed.

Affirmed.