## SOUTHWESTERN BREWING CORPORATION v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 2079.

Circuit Court of Appeals, Tenth Circuit.

Oct. 21, 1940.

Russell V. Johnson, of Oklahoma City, Okl. (J. H. Miley, Robert M. Williams, and Murray Gordon, all of Oklahoma City, Okl., on the brief), for appellant.

Lynn J. Bullis, Jr., and Robert M. Rainey, both of Oklahoma City, Okl. (S. B. Flynn and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On November 6, 1934, the United States Fidelity & Guaranty Company[1] issued its policy of liability insurance to the Southwestern Brewing Corporation[2] and the old King Distributing Company[3] insuring them for the period from November 6, 1934, to November 6, 1935, against liability imposed by law, arising out of bodily injuries accidentally sustained by any person, caused by the ownership, maintenance, or use of an automobile either of Southwestern or

---

[1] Hereinafter referred to as Guaranty Company.

[2] Hereinafter referred to as Southwestern.

[3] Hereinafter referred to as Old King.

Old King. The pertinent provisions of the policy are set out in Note 4.[4]

Southwestern was organized as a corporation under the laws of Delaware and received its charter on July 14, 1933. It was authorized to do business in Oklahoma as a foreign corporation on July 21, 1933. It is a manufacturer of beer. Its brewery is located in Oklahoma City. It sells beer to distributors, who in turn sell to retail dealers throughout Oklahoma and adjoining states. Prior to April, 1934, it also sold beer directly to retail dealers in Tulsa and Oklahoma City. Its officers and directors are: M. Iralson, president and director; N. A. Schlangen, vice-president and director; and N. S. Blumberg, secretary and director. The names of its stockholders and the number of shares held by each are set out in Note 5.[5]

In 1934, Iralson, Schlangen, and Blumberg decided that Southwestern should no longer engage in the direct distribution of beer and caused Old King to be or-

[4] United States Fidelity and Guaranty Company
Baltimore, Maryland
(Herein Called the Company)
Does Hereby Agree . . .
To Pay on behalf of the Assured all sums which the Assured shall become obligated to pay as damages by reason of liability imposed upon him by law and arising out of bodily injury, . . . resulting therefrom . . , accidentally sustained by any person or persons if caused by the ownership, maintenance or use of the automobile. . . .

(a) To Defend in the name and on behalf of the Assured any suit brought against the Assured, seeking damages on account of such bodily injury or property damage, even if such suit is groundless, false or fraudulent . . .

In the event of accident written notice shall be given by or on behalf of the Assured to the Company or any of its authorized agents as soon as it is reasonably possible thereafter, irrespective of whether or not any injury or damage is apparent at the time. . . The Assured shall cooperate with the Company and, upon the Company's request, shall assist in effecting settlement, securing evidence, and the attendance of witnesses, but the Assured shall not voluntarily make any payment, assume any obligation or incur any expense other than for immediate first aid, except at his own cost.

| | No. of Shares Held |
|---|---|
| [5] Moses Iralson | 137½ |
| Moses Iralson, as trustee under a trust agreement dated May 31, 1935, known as Robert Morse Frankel Trust No. 1 | 112½ |
| Moses Iralson, as trustee under a trust agreement dated May 31, 1935, known as Alice Elaine Frankel Trust No. 1 | 112½ |
| Moses Iralson and Henry Honet as trustees under a trust agreement dated June 1, 1936, and known as Adel Iralson Trust No. 1 | 137½ |
| Nicholas A. Schlangen | 275 |
| Nicholas A. Schlangen, as trustee under a trust agreement dated December 24, 1934, known as Robert A. Schlangen Trust No. 1 | 25 |
| Nicholas A. Schlangen, as trustee under a trust agreement dated December 24, 1934, known as Florence Schlangen Helmstag Trust No. 1 | 25 |
| Ellen M. Schlangen, as successor trustee under a trust agreement dated December 24, 1934, known as Ellen M. Schlangen Trust No. 1 | 125 |
| Ellen M. Schlangen, as successor trustee under a trust agreement dated December 24, 1934, known as Donald M. Schlangen Trust No. 1 | 25 |
| Ellen M. Schlangen, as successor trustee under a trust agreement dated December 24, 1934, known as William M. Schlangen Trust No. 1 | 25 |
| Nathan S. Blumberg | 250 |
| Morris A. Blumberg, as successor trustee under a trust agreement dated June 10, 1935, known as David L. Blumberg Trust No. 1 | 100 |
| Morris A. Blumberg, as successor trustee under a trust agreement dated June 10, 1935, known as James A. Blumberg Trust No. 1 | 100 |
| Jacob Logan Fox | 50 |

ganized as a corporation under the laws of Oklahoma. It was chartered on April 9, 1934. Its officers and directors are: M. Iralson, president and director; F. J. Weisman, vice-president and director; and C. Ford, secretary and director. The names of its stockholders and the number of shares held by each are set out in Note 6.[6]

Iralson is general manager of both Southwestern and Old King. Ford is assistant manager and sales manager of both Southwestern and Old King. The office of Old King is located in a building owned by Southwestern where the office of the latter is also located. Old King pays no rent for the space it occupies. The sole business of Old King has been the distribution of Old King beer manufactured by Southwestern. It distributes approximately 75 per cent of Southwestern's output.

Iralson, Schlangen, and Blumberg purchased from Southwestern certain trucks which had been used by it in the distribution of Old King beer and transferred them to Old King in return for the issuance to them by Old King of certain shares of its capital stock.

In February, 1935, Old King was authorized to do business in Texas and opened a branch office at Wichita Falls, Texas, where it had three employees—J. P. Witherspoon, branch manager, and Prosser and Moss, truck drivers.

On February 9, 1935, one of the trucks above referred to, and which was covered by the policy, was involved in an accident with an automobile driven by Jewel Burns in the City of Wichita Falls, Texas.

At all times while the truck was owned either by Southwestern or Old King it was registered in the records of the State Highway department of Oklahoma as being owned by Southwestern.

On the day of the accident Moss, the driver of the truck, reported the accident to Witherspoon and they investigated the accident and interviewed at least one eyewitness. On February 25, 1935, E. W. Napier, attorney for Mrs. Burns, wrote Old King at Wichita Falls, Texas, advising it that he had been employed by Mrs. Burns in connection with her claim against Old King for injuries arising out of the accident. Neither Witherspoon nor Old King advised Southwestern of the accident or the claim.

On February 8, 1937, Mrs. Burns commenced an action in the district court of Oklahoma County, Oklahoma, against Southwestern and Old King to recover damages for personal injuries and damages to her automobile resulting from the accident. Southwestern and Old King caused the summons which was served upon them in the action to be delivered to the Guaranty Company. The summons was the first notice which the Guaranty Company had of the accident or claim of Mrs. Burns.

On February 27, 1937, the Guaranty Company acknowledged receipt of the summons, stated that the filing of the suit was the first notice it had of the accident, that it was undertaking an investigation thereof without waiving any of its rights under the policy, that it was referring the matter to attorneys Owen & Bullis, 726 First National Bank Building, with the request that they protect the interests of Southwestern and Old King, but that it was to be fully understood that its action was taken with complete and full reservation of all of its rights.

On May 20, 1937, the Guaranty Company wrote a letter to Southwestern in which it stated that it had conducted an investigation and found that there was a collision in which Southwestern's and Old King's truck, driven by Moss, was involved; that an immediate report thereof was made to Witherspoon, manager; that later a claim was made against Southwestern by Napier; that the Guaranty Company through its attorneys would enter into the trial of the case which was set for May 24, 1937, at Oklahoma City, and make the best defense possible, but that due to the delay in notice and for other reasons, it would not pay any judgment that might be recovered by Mrs. Burns against Southwestern and Old King, and that Southwestern might join in the defense through its own attorney if it so desired; that if Southwestern so desired, the Guaranty Company would relinquish control of the defense to Southwestern's attorneys and give

| | No. of Shares Held | | No. of Shares Held |
|---|---|---|---|
| [6] M. Iralson | 20 | N. A. Schlangen | 19 |
| C. Ford | 1 | N. S. Blumberg | 19 |
| F. J. Weisman | 1 | | |

them all information and assistance possible; and that if Southwestern desired to attempt to effect a compromise the Guaranty Company would assist it.

Thereupon, Southwestern employed Miley, Hoffman, Williams, and France & Johnson, of Oklahoma City, to represent it in the defense of the Burns action.

On May 24, 1937, Old King and the Guaranty Company entered into a stipulation wherein it was recited that the Burns action had been defended by the Guaranty Company through its counsel, Owen & Bullis, under a reservation of rights by the Guaranty Company and without in any way admitting the liability of the Guaranty Company to pay any judgment that might be rendered in the Burns action against Southwestern or Old King, and that it had been suggested that counsel for Southwestern and Old King participate in the defense of the action, with the consent and approval of the Guaranty Company, and in which it was agreed, that without prejudice to the rights of Southwestern and Old King or the Guaranty Company, Miley, Hoffman, Williams, and France & Johnson might participate in the defense and trial of the action; that it was desirable to compromise the action; that negotiations should be conducted through attorneys for the respective parties, and that should a settlement be effected and a sum of money paid to Mrs. Burns in settlement of her action, the settlement and payment should be without prejudice to the rights of Southwestern and Old King to claim reimbursement from the Guaranty Company, and should be without prejudice to the rights of the Guaranty Company to disclaim any obligation to pay the amount of the compromise, or to reimburse either Southwestern or Old King for any amount paid as a compromise, on any grounds other than that Southwestern and Old King had caused their attorneys to participate in the preparation for the trial of the Burns action and in the negotiation for the settlement thereof, and with the consent of the Guaranty Company had agreed to pay and had paid $3,750 in compromise of the action.

A compromise was effected and Southwestern paid to Mrs. Burns $3,750 and received from her a written release of Southwestern and Old King discharging them from all liability growing out of the accident.

At the time of the settlement Old King had sufficient cash on hand to pay the amount of the compromise, but it owed Southwestern several thousand dollars in excess of the amount of its cash on hand, and Southwestern paid the amount of the compromise because it was more convenient for it than for Old King so to do. Southwestern has never charged Old King with the amount it paid in compromise of the Burns suit.

After the accident Old King closed its branch office at Wichita Falls, Texas, and Southwestern entered into an arrangement with Joseph F. Long of Wichita Falls, Texas, to handle the distribution of Old King beer in the territory formerly covered by the branch office of Old King at Wichita Falls, Texas. The truck involved in the accident was loaned to Long by Southwestern as an added inducement for him to undertake the distribution of Old King beer in that territory and Old King never received any money or other consideration for the use of the truck by Long.

In its verified answer in the Burns action, Southwestern denied ownership of the Old King truck involved in the accident, and denied that the driver thereof was the agent, servant, or employee of Southwestern.

On July 11, 1938, Southwestern commenced an action against the Guaranty Company in the district court of Oklahoma County, Oklahoma, to recover on the policy the sum of $3,750 paid in compromise of the Burns action, the sum of $205 incurred for attorney's fees, and the sum of $29.73 incurred for witness fees incident to the defense of the Burns action. The cause was duly removed to the District Court of the United States for the Western District of Oklahoma.

In its amended answer the Guaranty Company pleaded that Southwestern failed to give notice of the accident until the latter part of February, 1937; that Old King was dominated and controlled by Southwestern and was the agent and instrumentality of Southwestern, and that notice to Witherspoon was notice to Southwestern. It also generally denied the allegations of Southwestern's petition.

Trial by jury was waived and the cause was tried to the court. At the trial counsel for Southwestern admitted that the failure to give notice was prejudicial to the Guaranty Company.

The trial court found the facts substantially as above stated, concluded that Old King was the agent and instrumentality of Southwestern; that they represented one insurable interest; that unless Old King was the agent and instrumentality of Southwestern, Southwestern was not legally liable to Mrs. Burns for the injuries sustained by her in the accident; and that the failure of Southwestern to give notice for more than two years after the accident prejudiced the Guaranty Company and barred recovery on the policy.

By the stipulation the Guaranty Company agreed that counsel for Southwestern might participate in the defense and in the compromise of the Burns action, consented to the compromise, and impliedly agreed that the amount paid was reasonable. It reserved the right, however, to make any other defense to a claim of liability on its part, including the right to assert the failure to give timely notice of the accident and the claim and that the amount paid by Southwestern was not in satisfaction of any liability imposed upon it by law.

The burden was upon Southwestern to establish that the amount paid by it in compromise of the Burns action was in satisfaction of a liability imposed upon it by law.[7] If the evidence established that Old King was the agent and instrumentality of Southwestern, then Southwestern met that burden, but in that event notice to Witherspoon of the accident and the claim was notice to Southwestern and its failure to give timely notice thereof to the Guaranty Company would bar recovery. On the other hand, if the evidence established that Old King was a wholesale dealer which purchased beer from Southwestern and resold it to retail dealers, and under it Old King should be regarded as a separate and distinct entity, then Southwestern was not legally liable for the alleged wrongful acts of Old King's truck driver at the time of the accident and the amount paid by Southwestern in compromise of the claim was not in compromise of a liability imposed by law upon Southwestern.

It follows that in either view of the evidence, the judgment of the trial court was right and it is, therefore, affirmed.

---

[7] Green Bus Lines, Inc. v. Ocean Acc. & Guaranty Corp., 282 N.Y. 104, 25 N.E. 2d 865, 866, 867;

Brinkman v. Western Automobile Ind. Ass'n, 205 Mo.App. 71, 218 S.W. 944, 946;

Isaacson Iron Works v. Ocean Acc. & Guarantee Corp., 191 Wash. 221, 70 P.2d 1026, 1028, 1029;

36 C.J. p. 1126, § 125.