**Matter of Kenneth Dickson FORGAY,
Voluntary Bankrupt.
B-137-54.**

United States District Court
D. Utah, Central Division.
April 4, 1956.

Joseph W. Boone, Salt Lake City. Utah, for bankrupt.

Macoy A. McMurray, Salt Lake City, Utah, for Personal Industrial Loan Corp.

RITTER, District Judge.

This is an ancillary proceeding to enjoin a judgment creditor from executing upon a judgment obtained in a state court and thereby to protect and effectu-

ate the bankruptcy court's orders of adjudication and discharge in the matter of Kenneth Dickson Forgay, voluntary bankrupt.

The bankrupt and his wife obtained a loan from Personal Industrial Loan Corporation [1] on November 21, 1953, in the sum of $878.38. They executed a note and completed the written form prepared by the Loan Co. concerning their financial condition.

On May 18, 1954, the bankrupt filed a voluntary petition in bankruptcy in the United States Court for the District of Utah, and listed the debt owed to the Loan Co. in the annexed schedules. Adjudication followed on June 15, 1954. The Loan Co. had personal notice of the bankruptcy proceedings but entered no appearance, filed no proof of claim and interposed no objections to discharge.

While the bankruptcy was pending and prior to discharge the Loan Co. commenced action on the note against the bankrupt in the city court of Salt Lake City, Utah, and alleged also in its complaint that bankrupt made a false financial statement to induce the loan. Upon bankrupt's failure to appear in the state court proceeding, a default judgment on the note was entered in the sum of $696.-18, together with interest and attorney's fees according to the tenor of the note. The record does not show that a trial was held, or that any competent evidence was presented to establish the alleged fraud and no findings of fact or conclusions of law were prepared or filed.

The bankruptcy court entered its order of discharge on April 20, 1955. The debt owed to the Loan Co. on the note was among the bankrupt's obligations which were discharged.

Thereafter, bankrupt filed in the state court a notice of appeal and motion to restrain the Loan Co. from executing on the judgment, and the Loan Co. filed a motion to dismiss the appeal. The state court denied the bankrupt's motion and dismissed his appeal. Subsequently the bankrupt filed a motion in the city court of Salt Lake City, Utah, to vacate the judgment and to allow him to plead. This also was denied, and the Loan Co. proceeded to attach bankrupt's wages.

The bankrupt is here seeking a permanent injunction against the Loan Co. and directing it to dismiss the garnishment proceedings, on the grounds that the judgment was based upon a debt which was discharged in bankruptcy. The Loan Co. contends that it was at liberty to commence the action in the state court while the bankruptcy proceedings were pending, and having alleged a non-dischargeable claim in the complaint filed in the state court and obtained a judgment thereon, the bankruptcy court has no jurisdiction to enjoin the state court proceedings.

The Loan Co. relies upon two decisions of the Tenth Circuit, Personal Finance Co. of Colorado v. Martinez [2] and Beneficial Loan Co. v. Noble.[3]

Both cases are plainly distinguishable from the present. In both cases the state court action was one sounding in tort for damages for fraudulent misrepresentations. In neither was the action brought upon the debtor's note.

In the case before us, the state court action is *founded upon the debtor's note*. The Loan Co. took a *judgment on the note*, which included interest and attorneys' fees as provided in the note.

It is one thing to hold, as the Tenth Circuit did in Noble, that the state court judgment *in the action for damages for fraud* was binding upon the bankruptcy court under the doctrine of *res adjudicata*. It is quite another matter to hold that the state court judgment *on the debtor's note*, the very same note scheduled and discharged in the bankruptcy court, precludes the bankruptcy court from taking such action as may be necessary to effectuate its orders of adjudication and discharge and for the enforcement of the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

1. Hereinafter called the Loan Co.

2. 10 Cir., 1940, 115 F.2d 226.

3. 10 Cir., 1942, 129 F.2d 425.

This is the distinction on which the court in Noble grounded its decision. There is nothing in either Martinez or Noble contrary to the decision reached here. Indeed, we think Noble supports our view, by recognizing the power of the bankruptcy court to entertain an ancillary bill in aid of and to effectuate its order of adjudication and discharge. Judge Phillips' language in the Noble case, 129 F.2d 425, 427, is clearly to that effect:

"Among the granted powers of a bankruptcy court are the allowance and disallowance of claims, the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto, the rejection in whole or in part 'according to the equities of the case' of claims previously allowed, and the entering of such judgments 'as may be necessary for the enforcement of the provisions' of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. In respect to such matters, the jurisdiction of the bankruptcy court is exclusive of all other courts."

Certainly we have a question here of the "allowance and disallowance of claims," and "the determination of controversies in relation thereto," and "the entering of such judgments 'as may be necessary for the enforcement of the provisions' of the Bankruptcy Act". In respect to these matters Judge Phillips says "the jurisdiction of the bankruptcy court is exclusive of all other courts."

In Personal Finance Co. of Colorado v. Martinez the court said [115 F.2d 228] that the suit in the state court was based upon a non-dischargeable claim and since it was a debt "from which the bankrupt would not be released by a discharge in bankruptcy, it was error to enjoin the prosecution of the state court action." However, in Beneficial Loan Co. v. Noble, the court said: "A bankruptcy court has jurisdiction of an ancillary bill in aid of and to effectuate its order of adjudication and its order of discharge. It may enjoin the prosecution of an action in the state court where facts are averred and established showing that such relief is necessary to effectuate its orders of adjudication and discharge. In so far as our decision in Personal Finance Co. of Colorado v. Martinez, 10 Cir., 115 F.2d 226, conflicts with the foregoing, it is hereby overruled." The court recognized the prevailing rule that a bankruptcy court has jurisdiction to enjoin proceedings in state courts to preserve the benefits of a discharge, and corrected any misinterpretation created by the holding in the Martinez case on that point.

The Bankruptcy Act was enacted by the Congress of the United States for the relief of the helplessly indebted citizen. Attempted encroachments upon this humane purpose by state courts have been curtailed by federal court edict and protective Acts of Congress. This purpose and meaning of the Act is stated by Justice Sutherland in Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230, as follows:

"One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' * * * This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. * * * The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. Local rules subversive of that result

cannot be accepted as controlling the action of a federal court."

Prior to 1934 it had become the practice of some federal courts who had formally discharged the bankrupt to send him forth without protection against suits and executions in state courts upon debts discharged by the federal courts. The now outmoded theory that the bankruptcy court lost jurisdiction after discharge of the bankrupt is set forth in the case of In re Boardway.[4] In that case the federal court held that it had no power to interfere with the enforcement of a state court judgment obtained on a debt which had been discharged in bankruptcy because the bankruptcy court lost its jurisdiction after the discharge.

The Supreme Court of the United States in 1934 in the case of Local Loan Co. v. Hunt, supra, reversed this trend and established the contrary one. In that case bankrupt's employer was sued in a state court by a creditor on an assignment of wages on a debt discharged in the federal bankruptcy court. An injunction was sought by the bankrupt in the federal court and granted. It was held that "a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein * * *."

The Bankruptcy Act itself provides the basis for the rule. Section 2, sub. a of the Act, 11 U.S.C.A. § 11, sub. a, provides in part: " * * * courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act * * * " and Section 2, sub. a(15) of the Act, 11 U.S.C.A. § 11, sub. a(15), invests the bankruptcy courts with the power to "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act * * *."

Inasmuch as bankruptcy courts are courts of equity in ancillary and supplemental proceedings, they may invoke injunctive powers to effectuate and activate their orders, and a general discharge is such an order. Circumstances under which the court should intervene are not limited to any given facts. Since the Hunt case the courts have repeatedly recognized the principle and have exercised it to an increasing degree.[5]

The majority of the court in Helms v. Holmes,[6] holding in favor of the creditor, relied upon the trend of the cases *prior* to the Hunt case. However, the court did recognize the modern trend of relieving the bankrupt from the harshness of the older view, and pointed out that the granting of injunctive relief by a federal court was a discretionary matter, dependent upon the facts of each case, and that there were insufficient grounds for invoking equitable relief in that case. In an excellent dissenting opinion, Judge Paul expresses the philosophy behind this modern development in the bankruptcy law, as follows:

"It is probable that this modern view of the right of a bankruptcy court to protect by injunction the effect of a discharge in bankruptcy has been inspired by the necessity of dealing with manifest injustices that have arisen rather than from any essential error in the theory of

4. D.C.1918, 248 F. 364.

5. State Finance Co. v. Morrow, 10 Cir., 1954, 216 F.2d 676; Seaboard Small Loan Corporation v. Ottinger, 4 Cir., 1931, 50 F.2d 856, 77 A.L.R. 956; Holmes v. Rowe, 9 Cir., 1938, 97 F.2d 537; Davison-Paxon Co. v. Caldwell, 5 Cir., 1940, 115 F.2d 189, 133 A.L.R. 432; Evans v. Dearborn Machinery Movers Co., 6 Cir., 1953, 200 F.2d 125; Personal Finance Co. of Colorado v. Day, 10 Cir., 1942, 126 F.2d 281; In re Cleapor, D.C.1936, 16 F.Supp. 481; In re Tillery, D.C.1936, 16 F.Supp. 877; In re Patt, D.C.1941, 43 F.Supp. 754; Annotation, 141 A.L.R. 1380–1394.

6. 4 Cir., 1942, 129 F.2d 263, 269, 141 A.L.R. 1367.

the earlier cases. The average bankrupt is a layman who has been advised that a discharge in bankruptcy releases him from his debts and who has faith in the dignity, the force and effect of a decree of a federal court. He has surrendered his property and has no means to defend himself against further litigation. It has become a custom for greedy creditors to take advantage of this situation by ignoring the bankruptcy proceedings and the order of discharge and suing on their debts in the state courts, hoping that the bankrupt, because of his ignorance and his faith in his order of discharge or because he is unable to employ counsel, will fail to appear and plead the discharge or otherwise defend. And unfortunately this frequently happens. Usually these suits are brought before inferior state courts, such as justices of the peace, many of whom are laymen; and even when the bankrupt appears and pleads his discharge these justices, without legal training or experience in interpretation of the Bankruptcy Act, undertake to pass upon the effect of the discharge as affecting the particular debts—usually reaching erroneous conclusions and usually adverse to the bankrupt. Every court which deals with any considerable number of bankruptcy cases is familiar with the difficulties which bankrupts have in protecting themselves from rapacious creditors even after discharge. * * * "

Every court which deals with any considerable number of bankruptcy cases is familiar with the conditions of which Judge Paul speaks. The bankrupt is broke, and cannot hire an attorney. The meagreness of his resources is such that usually he is able at best to obtain only a lawyer of mediocre ability, or one who fails to do a lawyerlike job. Bankrupt's contest against the legal resources of a loan company is bound to be an unequal one. Neither the bankrupt nor his lawyer is familiar with this field of law and both are led into the false security of a belief that while the matter is pending, the bankrupt court has exclusive charge of it. This is shown by the fact that almost always these cases arise out of defaults in the state court action. Enforcement of the default judgment penalizes the bankrupt for having faith in the dignity and power of the federal court.

But this is not all. Judges who handle bankruptcy matters find other striking aspects of this problem. Almost invariably loan company creditors contest the discharge of bankrupt upon the ground that the loan was induced by fraud and is not dischargeable. A judge comes to learn that such objections to the discharge must be scrutinized with great care. They cannot be disposed of upon affidavit. Sworn testimony subject to searching cross-examination is essential. If the loan company by-passes the federal bankruptcy court and gets a default judgment in a city court, it of course avoids such inquiry into the facts of its claim. With a choice between a federal court which makes a searching inquiry into the facts and a city court in which the loan company can obtain a default, the loan company choice of forum is easy to forecast.

This, of course, is what occurred in the case before us. The Loan Co. claim was scheduled properly in the bankruptcy proceeding. The Loan Co. had personal notice of these proceedings. The Loan Co. chose completely to ignore the bankruptcy court. It entered no appearance, filed no proof of claim and interposed no objections to discharge.

This is pretty much to make a mockery of the Bankruptcy Act and of Judge Phillips' opinion written for the Court of Appeals for the Tenth Circuit in Beneficial Loan Co. v. Noble, supra, and particularly his language at page 427 of 129 F.2d.

The Loan Co. in the present case is attempting to reverse the process. Judge Phillips says the allowance and disallowance of claims and the determination of

controversies in relation thereto, are within the *exclusive jurisdiction* of the bankruptcy court. If the Loan Co.'s contention is upheld in the present case, the city court of Salt Lake City will have exclusive jurisdiction, and the bankruptcy court will have nothing whatever to do with those matters. If the Loan Co.'s view is upheld there will be no more objections to discharges filed in the bankruptcy court in cases of this kind. Loan companies will seek default judgments in the city courts.

As compelling as the foregoing reasons seem to me to be, this still is not the whole picture. Experience with these bankruptcy matters teaches a judge that the view for which the Loan Co. contends would put a premium upon the loan companies' carelessness, if not their collusion, in obtaining applications for loans which are improperly or inadequately filled out by borrowers. A loan company manager's job is to get the money out at interest. The more he gets out, the more he gets paid. This affects his efficiency rating for promotion. It affects the financial success of the concern. To be sure, if he has excessive bad debt losses they will reflect against him. But, if the lending agency manager can make loans with assurance that the borrower won't be able to get them discharged in bankruptcy, he need not be so careful about the applications. Indeed, in the event the loan turns sour, it will be better for him and his concern if there is an omission or a misstatement in the application. At the lending stage of the transaction, with every pressure upon the loan company official to make the loan, there will be an increased temptation for carelessness, and in some cases actually for collusion. Unhappily, a judge doesn't have to be on the bench of a bankruptcy court very long before he observes both.

■ These, then, are the reasons for close scrutiny of the objection to the discharge, and in support of the view that the bankruptcy courts' exclusive jurisdiction over the allowance and disallow-

ance of such claims should not be circumvented.

The following are some cases, briefly analyzed, to further illustrate the principle of the wide and almost unlimited scope of facts upon which injunctive relief has been granted.

In Holmes v. Rowe, supra, the debtor was adjudicated a bankrupt while a suit on a listed debt was pending in the state court. After discharge, the creditor took judgment by default. While the bankrupt could have appeared in the state court and asked for a stay, he failed to make any defense in that court. A permanent injunction was sought and granted in federal court against enforcement of the judgment.

In Davison-Paxon Co. v. Caldwell, supra, the debtor was adjudicated while suit was pending against her in the state court. She applied to the state court for a stay, alleging bankruptcy proceedings and that the debt was dischargeable. The state court held the debt non-dischargeable and judgment was granted. After her discharge the debtor applied to the bankruptcy court for an injunction. The court held the debt was dischargeable and granted the injunctive relief.

In re Cleapor, supra, the creditor, aware of the bankruptcy proceedings ignored them and brought suit in a state court before a justice of the peace after discharge had been granted to the bankrupt. Upon application for injunction, the bankruptcy court held that the validity, amount and enforcement of securities was for the exclusive determination of the bankruptcy court.

In re Tillery, supra, prior to adjudication, the bankrupt was sued for automobile accident damages. Default judgment was taken on a complaint for "willful and malicious" injury. [16 F.Supp. 878.] The debtor then went into bankruptcy, and the judgment creditor ignored the bankruptcy proceeding. The federal court granted an injunction after a determination that the debt was dischargeable.

In Seaboard Small Loan Corporation v. Ottinger, supra, the court unhesitatingly issued an injunction against a creditor, who, after adjudication of the debtor as bankrupt, undertook to enforce a prior assignment of wages. This case stands solidly for the rule that the primary objective in all these proceedings is to protect the debtor in his rights inherent in a discharge in bankruptcy.

As previously set forth, the adjudication in this case in the bankruptcy court took place on June 15, 1954, and every proceeding in the state court took place thereafter. The indebtedness sued upon in the state court was listed in the schedules and the suing Loan Co. had notice thereof. Without availing itself of the facilities of the bankruptcy court the Loan Co. filed a suit in the state court. The primary allegation of the complaint was the balance due on the note and for interest and attorney's fees according to its terms. The complaint also set forth an allegation of fraud as follows: "At the time of securing said loan the defendants executed in writing a materially false statement raising their financial condition * * *." The prayer asked for judgment on the note.

The bankrupt failed to defend in the state court and defaulted while relying on the proceedings in the bankruptcy court to protect him against the suit in the state court. At that time he had no order of discharge in the federal court to interpose in the state proceeding. Default judgment was taken against the bankrupt. The record shows that the judgment prayed for and granted was upon the note and not for damages growing out of fraud.

■ Is the bankrupt entitled to injunctive relief from this court under all of the facts and circumstances of this case? We think the answer is clearly yes.

A case very similar to the facts of the present is State Finance Co. v. Morrow, supra. In that case a loan company commenced suit in a state court on a note after the debt thereon had been discharged in a bankruptcy proceeding. The bankrupt immediately instituted ancillary proceedings in the bankruptcy court to enjoin the action in the state court. The loan company then alleged that in reality the suit was based on a false financial statement. The federal court granted the stay on the ground that the suit was based upon the discharged debt and not upon fraud. The Court of Appeals affirmed. Speaking for the court, Judge Murrah said [216 F.2d 680]:

"The suit in the state court is upon the note scheduled in the bankruptcy proceedings, and the loan company prays judgment upon it. It now says that although the complaint is upon the note, liberality of pleadings in the justice of the peace court allows it to rebut any defense of discharge by a showing of fraud in the procurement of the debt evidenced by the note.

"The debt on the note has been discharged; only the liability for fraud survives the discharge. As a practical matter based upon the realities of the judicial processes in a court in which the issues are so loosely cast, the bankruptcy court is unable to determine with any degree of satisfaction whether the ultimate judgment of the court will be based upon the debt for which the note was given or the fraud which may have induced it. The court may well have taken judicial notice that the court in which the liability was asserted was not a court of record where issues of law and fact are defined with any degree of particularity, and that for all practical purposes the bankrupt was defenseless. It is these practical considerations which prompt bankruptcy courts to exercise their equitable protective powers. Indeed, it is these considerations which impose upon them the inescapable duty to vouchsafe the integrity of their decrees. * * *

"The trial court determined the adequacy of the remedy upon the face of the complaint and concluded that the Appellant's suit was upon the discharged debt. We think the trial court was fully justified in so doing."

In the Morrow case the court had only the complaint filed in the state court before it to determine the grounds upon which judgment was sought. In this case the court has before it a judgment entered by the state court which judgment is upon the note and not upon fraud and the debt evidenced by the note has been discharged in a bankruptcy proceeding.

The state court has neither heard evidence on the question of dischargeability of the claim nor entered a decree declaring the claim to be non-dischargeable.

Strong additional reasons support our view. The Act itself provides that it shall be administered by the federal courts. Every orderly and needful remedy and proceeding are provided in the Act. Protection to the debtor, creditor and the public are all provided. The division of judicial administration weakens the Act and confuses its administration. With orderly procedure and complete jurisdiction available, it can be relied upon by the worthy debtor to protect him against embarrassment, surprising and harassing proceedings and the expense of a multiplicity of unnecessary suits. The public and the creditor are protected against the discharge of the unworthy debtor.

A creditor who has notice of the adjudication of his debtor in bankruptcy in a proceeding wherein his claim is listed in the bankrupt's schedule and who wholly ignores the bankruptcy proceeding has himself in effect defaulted. A creditor who so ignores the bankruptcy court and who seeks to pursue his remedies in the state court manifestly is circumventing the bankruptcy proceedings. He obtains an advantage over the other creditors of the bankrupt. If one creditor ignores the notice of the bankruptcy court and seeks his remedy in the state court claiming fraud, why not all creditors? This conduct on the part of creditors, if encouraged, portends the disintegration of the bankruptcy system and its orderly administration. There is no justification for federal courts to abdicate their authority to the state courts, jeopardize the usefulness of the Bankruptcy Act, permit the confusion and harassment of the honest debtor, give advantage to the unscrupulous creditor and contribute to the lack of public faith in the proceeding itself.

In the final analysis the decision of cases of this kind rests within the sound discretion of the court. In no case since Local Loan Co. v. Hunt, supra, has the discretionary power of the court to grant or deny the injunction in cases of this nature been questioned. On the contrary, the principle has been repeatedly affirmed.[7]

Judgment is in favor of the bankrupt. The permanent injunction is granted. His counsel is directed to prepare formal findings, conclusions and decree.

7. State Finance v. Morrow, supra; Holmes v. Rowe, supra; Davison-Paxon v. Caldwell, supra; Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Personal Finance Co. of Colorado v. Day, supra; Evans v. Dearborn Machinery Movers Co., supra; Helms v. Holmes, supra; In re Devereaux, 2 Cir., 1935, 76 F.2d 522.